## Louisville & Nashville R. Co. v. Pierce et al.

March 14, 1950.

Rehearing denied June 23, 1950.

Lawrence F. Speckman, Judge.

190

H. T. Lively, J. P. Hamilton, J. L. Lenihan and James P. Helm, Jr., for appellant.

Joseph M. Hayse and Nellie S. Hayse for appellees.

JUDGE CAMMACK—Reversing.

The Louisville & Nashville Railroad Company is appealing from a judgment directing it to enlarge an existing underpass located on the track passing through appellees' farm in Jefferson County. The track belongs to the Louisville, Henderson & St. Louis Railway Company, the appellant's lessor. The portion of the farm on the west extends along the track for 2,775 feet, while that on the east extends along it 4,775 feet. This land is all part of an original tract owned by Horace and Bell Moremen. A man named Chism now owns the remaining 90 acres of the original Moremen tract, which lies exclusively on the west of the railroad, fronting on it 2,000 feet.

The Louisville, St. Louis & Texas Railway Company procured the right of way through the Moremen land in 1892 by a deed. This deed provided that the Moremens should construct and maintain suitable fencing on each side of the right of way, and that the railroad should "make two passways for cattle either under or across" the track. The Louisville, St. Louis & Texas Railway Company went into bankruptcy as a result of the panic of 1893, before the road was constructed. Through foreclosure proceedings, the railroad property was conveyed to the newly organized Louisville, Henderson & St. Louis Railway Company. That Company constructed the track through the Moremen farm

in 1905 and 1906, and operated it until 1929. In that year, the track in question was leased to the appellant. One provision of the lease follows: ''All the corporate rights, franchises and privileges of the Lessor, necessary to be enjoyed and exercised by the Lessee for the proper maintenance and use, operation and management of the leased property * * * ; provided, however, that nothing herein contained shall operate to grant or demise, or be construed to include the franchise to be a corporation possessed by the said Lessor, or any other right, privilege or franchise which is, or may be, necessary to carry out the provisions of this lease, or to fully preserve the corporate existence or organization of the said Lessor; and its said franchise to be a corporation, and all the rights, privileges and franchises requisite for the preservation of the corporate existence or organization of the Lessor, and for the proper performance of the terms of this lease, are hereby expressly reserved and excepted from these presents.''

The part of the original Moremen tract now owned by the appellees was purchased by them in February, 1942. At that time the right of way was fenced, and there existed only one passway by which cattle could move from one part of the farm to the other. That was an underpass approximately 9 feet wide and 9 feet high.

The appellees, by petition and amended petition, alleged that ''there is now and always has been only one passway;'' that performance of the obligation to construct an additional passway had been demanded and refused; and that in addition to being obligated by the Moremen deed, the appellant was also obligated to construct by virtue of paragraph 16 of its legislative charter. Paragraph 16 of the L. & N. charter provides that ''where it shall be necessary to pass through the land of any person, it shall also be their duty to provide for such person proper wagon ways across said railroad from one part of the land to the other. * * *''

In an opinion overruling the appellant's demurrer, it was held that irrespective of the provisions of the right of way deed, the appellant was required by its charter provisions to construct an underpass or an overpass, whichever was most feasible, of such height and width as to permit the passage of machinery and im-

plements required under present-day farming conditions.

The appellant, by answer and amended answer, denied all material allegations, and affirmatively alleged it did not own the right of way or tracks, but merely leased them from the Louisville, Henderson & St. Louis Railway Company. It further alleged its lessor, organized in 1896 under general law, still owned the property, and was not obligated by charter or statute to construct any passway for appellees. Further, it pleaded the statute of limitations, KRS 413.090, and alleged that to require it to construct the underpass would constitute a deprivation of property without due process. After their demurrer to the answer was overruled, the appellees replied, alleging the appellant had assumed the obligations of its lessor, denying the cause was barred by limitations, and generally controverting the answer of record.

The order, which directed the Commissioner to hear proof and report on the issues formed by the pleadings, also directed him to report whether or not the appellant should be required to provide an additional passway or crossing, and, if so, the kind and size of passway or crossing that would " * * * comply with the duty of the defendant and meet the requirements of the plaintiffs to operate their farmland on both sides of the right of way of the defendant under present-day conditions." The Commissioner reported the evidence supported the appellees' need for the larger passway, "to meet the needs of present-day farming." Further, he reported the cause of action was not barred by limitations as there was no proof of a previous demand, and that, while the deed called only for cattle passways, the appellant, by its charter, was under a duty to provide wagon ways as changed conditions made them necessary. It was recommended that a judgment be entered requiring the appellant to enlarge the existing underpass to a clearance of 16 feet in width, and 12 feet in height. The appellant excepted to the Commissioner's report, which exceptions were overruled in an opinion wherein the chancellor held the appellant to be obligated both under its charter and the Moremen deed, and that such duty was a continuing one not barred by limitations. In a subsequent opinion, he elaborated upon the propositions set out in the first.

The appellant advances six grounds for reversal. These are: (1) The provisions of appellant's charter were not properly before the court; (2) its charter is not applicable to the operation of the lines of its lessor; (3) the agreement for two passways applied to the entire original Moremen farm, and appellees, who own only a part thereof, are not entitled to enforce it; (4) the action is barred by the statute of limitations; (5) the covenant to construct had been broken prior to appellees' acquisition of title, thus becoming a chose in action which was not assigned to the appellees; and (6) the judgment granted below deprives the appellant of its property in violation of the 14th Amendment to the Federal Constitution.

Conceding, arguendo, that the provisions of the appellant's charter, requiring it to provide wagon ways, were properly before the court, its provisions are inapplicable. In Elliott on Railroads, 2d Ed., vol. 1, p. 635, it is said: "An authorized lease, that is, a lease executed under power granted by the legislature, imposes upon the lessee the duty of operating and conducting the road as the statute from which the lessor company derived its powers prescribed. * * *" See also Bardstown & L. R. Co. v. Metcalf, 4 Metc. 199, 61 Ky. 199, at p. 209, 81 Am. Dec. 541, for a discussion of the reasons behind the rule. It is apparent that the appellant's duty in regard to the appellees was pitched by the court below upon the basis of the previously quoted provisions in its charter. The Moremen deed is the foundation upon which liability must rest, and is a two-edged sword. It provides only for two cattle crossings, not for passways for farm machinery and implements necessary for present-day farming methods. The judgment granting the relief sought by the appellees can not be sustained, and the case must be reversed.

The fact that Mr. Chism now owns a portion of the original Moremen tract cannot act to preclude the appellees from enforcing their right to an additional cattle passway under the deed. The obvious purpose of the passway provision was to enable those controlling both sides of the track to have a means of access for their stock, to and from the respective lands on each side of the track. As the only part of the original tract owned by Chism lies on one side of the track exclusively, he has no reason for a passway.

It seems clear to us that, after conveying a fee to the railroad, there was secured to the Moremens by the same conveyance an easement across the railroad line, coupled with an affirmative covenant of the railroad company to construct two passways for cattle. Such rights clearly run with the land. Elizabethtown, L. & B. S. R. Co. v. Killen, 50 S. W. 1108, 21 Ky. Law Rep. 122. The appellant contends, however, that (1) the construction of the passways was necessarily a part of the construction of the track and limitation began to run when the road was completed; and (2) its obligation was not contingent upon a demand, but, even if it were, such demand was not made within a reasonable time.

The answer to both of these contentions lies, first, in the fact that an affirmative covenant running with the land is not breached until there has been a demand and a refusal. 54 C. J. S., Limitations of Actions, sec. 139; Concklin v. New York Cent. & H. R. R. Co., 149 App. Div. 739, 134 N. Y. S. 191, appeal dismissed 207 N. Y. 752, 101 N. E. 1099. Consequently, limitation would not begin to run until after a demand and refusal. The appellant, however, argues that a demand must be made within a reasonable time or else limitation will run anyway, citing 54 C. J. S., Limitations of Actions, sec. 201, and Slack v. Bryan, 299 Ky. 132, 184 S. W. 2d 873. An examination of this passage and the supporting cases reveals that this rule is applicable to ordinary contract, bailment and negotiable instrument situations. An extensive review of this subject is found in the Annotation to Bannitz v. Hardware Casualty Co., 219 Minn. 235, 17 N. W. 2d 372, 159 A. L. R. 1021. We have found no case of an affirmative covenant running with the land wherein the rule has been applied.

The rights of appellees in the instant case partake of fixed legal rights in real property. In 54 C. J. S., Limitations of Actions, sec. 201 (3), it is stated that, notwithstanding the general rule as to a reasonable time for making a demand, where an intention clearly appears that a demand is a prerequisite and that compliance is to be indefinitely prospective, there is no ground furnished on which the law can assume any fixed point as the limit to the reasonable time for making demand. We must hold that, in cases involving affirmative covenants running with the land, a demand and refusal, or, as pointed out in Elizabethtown, L. & B.

B. S. R. Co. v. Killen, supra, a tender of performance by the covenantor is a prerequisite to the running of limitation. We may further note that in the instant case, while the Moremens were bound by the deed to construct fencing along the right of way within six months from the date of the road's commencement, there was no such limitation in time imposed on the grantee railroad. This would indicate an indefinitely prospective operation of this covenant. Having reached the conclusion that this covenant was not breached prior to the appellees' acquisition of title, there can be no question in regard to the nonassignment of a chose in action.

Upon the view we have taken of the case ground (6) will not arise, as the appellant does not contend that an enforcement of the Moremen deed would constitute a deprivation of property without due process.

Judgment reversed for proceedings not inconsistent with this opinion.