## Hicks et al. v. Johnson.

(Decided February 4, 1930.)

COLDIRON & HARRIS' for appellants.

HAGER, PRICHARD & MALIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment enjoining appellants from obstructing the passway over their lot appurtenant to the property of appellee.

The facts are these: On May 30, 1907, C. W. Osten conveyed to Taylor Hicks and his mother, Paralee Hicks, a lot of ground fronting about 132 feet on the south side of the Midland trail in Ashland, and extending back between parallel lines approximately 258 feet. On July 17, 1911, Taylor Hicks and Paralee Hicks agreed upon a division of the property, he to take the front portion, and Paralee Hicks the rear portion, and the transaction was consummated by deeds that were duly recorded. At that time there was no outlet to Thirteenth street from the property conveyed to Paralee Hicks except over the property conveyed to Taylor Hicks, and in the deed from Paralee Hicks and her husband to Taylor a strip of ground 15 feet in width was reserved as a passageway for the parties of the first part, their heirs and assigns. On December 15, 1911, Paralee Hicks and her husband conveyed to C. C. Johnson and Mary E. Johnson, appellee, the property described in the deed from Taylor Hicks and wife to Paralee, together with all the rights, appurtenances, and privileges thereunto belonging. On December 16, 1911, and again on December 19, 1914, the Johnsons mortgaged the property to Nick McMahon to secure the loan of $550 each, evidenced by the notes of C. C. Johnson. C. C. Johnson was unable to meet the debts at their maturity, and the matter was adjusted by conveying the property to McMahon by a deed dated February 23, 1916. This instrument, though in the form of a deed, was intended only as a security for the indebtedness, and was made and accepted with the understanding that the property should be reconveyed to Mary E. Johnson upon the payment of the indebtedness. On October 7, 1916, Mary E. Johnson borrowed from her aunt, Anna Bauer, the money with which to discharge the notes held by McMahon, whereupon McMahon conveyed the property to Anna Bauer, who took title with the understanding and agreement that, upon the payment of the debt, the property should be reconveyed to Mrs. Johnson. On November 7, 1916, Anna Bauer conveyed the property to C. J. Bocklage, a Catholic priest who had charge of her affairs, and he likewise took title with the understanding and agreement that he would reconvey the property to appellee on payment of the money advanced by Anna Bauer. Thereafter appellee paid the debt in full, and C. J. Bocklage, by deed of record, conveyed the property to appellee. On February 14, 1925,

appellant Taylor Hicks and his wife conveyed the property over which the passway ran to appellant Maud J. Nickel, who, together with her husband, began to construct on the passway a garage and walkway. Though notified of appellee's rights before any work was done, they continued with the construction. Thereupon this suit was brought. In addition to other defenses not now insisted on, appellants pleaded that a written agreement discontinuing the use of the passway was entered into between Taylor Hicks and C. C. Johnson, and that appellee and her husband on October 26, 1916, appeared before Donald H. Putnam, a notary public, and duly acknowledged said instrument, and setting forth certain other acts which it is claimed constituted an estoppel.

The material evidence is as follows: Both Taylor Hicks and his wife, Sarah Hicks, testified in substance that Mr. and Mrs. Johnson stated that they did not want any passing over their property, and agreed that the passway might be closed. Mrs. Johnson stated that she would sign the necessary papers. The papers were drawn, but were never signed. After the agreement was made, they closed up the passageway at their end, and the Johnsons closed it up at their end. The Johnsons built a fence and a small gate, then filled up the passway with dirt, and later set out a hedge, and also a heavy barbed wire fence. On the other hand, Mrs. Johnson testified that she made no agreement about closing the passway, and never authorized her husband to make it. On the contrary, when the agreement closing the passway was brought to her, she refused to sign it. However, she did put up a gate and a small hedge fence that could be easily removed, but these were put on her own property. Mr. Donald Putnam, now secretary-treasurer of the Ashland Bi-Product Coke Company, but formerly an attorney at law, testified that he prepared the writing. It was then signed by C. C. Johnson at his office, and he attached thereto a certificate stating that it was acknowledged before him by Mary Johnson and her husband, C. C. Johnson. He then carried the instrument to Mrs. Johnson, and she refused to sign it.

While there is evidence that the passway in question is over ground that is rocky and muddy, and that appellee now has a much more convenient way to reach her premises, this fact has no bearing on the case, inasmuch as the easement is not one of mere necessity, but was

acquired by deed. Indeed, the main insistence of appellants is that Mrs. Johnson agreed to close the passway, and, the agreement having been executed by the erection of fences, she is now estopped from claiming the passway. Since fences may be readily removed at a small expense, it is extremely doubtful whether an oral agreement clearly established to close the passway, followed by the erection of fences, would be sufficient to work an estoppel and extinguish the easement. A more difficult question would be presented if appellee had stood by and permitted the Nickels to construct a walkway and garage on the right of way. That, however, is not the case. The Nickels were notified of appellee's rights, and thereafter proceeded at their peril. But we are not persuaded that the chancellor erred in holding that no oral agreement was made by appellee. While the Hicks say that the agreement was made, Mrs. Johnson is most emphatic in her denial, and her evidence finds strong support in the circumstance that she refused to sign the writing relinquishing the passway, although frequently approached for that purpose.

Judgment affirmed.